IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 1, 2005

## ALBERT FRANK KELLY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-26794    Bernie Weinman, Judge**

---

**No. W2004-01580-CCA-R3-PC  - Filed March 4, 2005**

---

The petitioner appeals the trial court's dismissal of his petition for post-conviction relief. On appeal he alleges that: (1) the post-conviction court erred in finding that he received effective assistance of counsel; (2) the post-conviction court erred in finding that his guilty plea was knowing and voluntary; and (3) the trial court violated the dictates of Tennessee Rule of Criminal Procedure 11. Therefore, his guilty plea should be set aside. Following our review, we affirm denial of post-conviction relief. Further, we conclude that the Rule 11 issue is waived and is not cognizable in a petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Robert Wilson Jones, District Public Defender, and W. Mark Ward and Karen Massey, Assistant Public Defenders, for the appellant, Albert Frank Kelly.

Paul G. Summers, Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Emily Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Facts and Procedural History

The petitioner, Albert Frank Kelly, was indicted on one count of rape (a Class B felony). Thereafter, a jury trial commenced but, after the victim testified, the petitioner chose to change his plea and enter an open plea of guilty to the court. The plea was accepted, and a sentencing hearing was held. Following the hearing, the petitioner was sentenced to twenty years as a Range II offender. Although he did not pursue a direct appeal, the petitioner did file a timely *pro se* petition for post-conviction relief, in which he asserted ineffective assistance of counsel and that his plea was entered

unknowingly and involuntarily. The trial court subsequently appointed counsel. The post-conviction court held an evidentiary hearing and, thereafter, denied relief. The petitioner now appeals to this Court contending that:

1)     the post-conviction court erred in finding that the petitioner received effective assistance of counsel;

2)     the post-conviction court erred in finding that the petitioner's guilty plea was knowing and voluntary; and

3)     the trial court erred in failing to follow the dictates of Tennessee Rule of Criminal Procedure 11; therefore, the guilty plea was defective and should be set aside.

Following, our review, the denial of post-conviction relief is affirmed.

The record reflects that the petitioner was charged with the rape of his wife's fifteen-year-old niece, D.M.[1] From that encounter, the victim conceived a child, which was ultimately proven to be fathered by the petitioner via DNA analysis. Following his indictment for rape, an initial plea offer of two years was extended to the petitioner in exchange for a plea to the lesser included offense of statutory rape. A second offer, extended by the State on the first day of trial, consisted of a sentence of eight years in exchange for the petitioner's plea to the indicted charge of rape. Following the rejection of that offer, a trial commenced; however, after the State presented the testimony of the victim, the petitioner chose to stop the trial and enter a plea of guilty to the court. The court accepted the plea and sentenced the petitioner to twenty years as a Range II offender.

At the post-conviction hearing, the petitioner testified to several instances of alleged ineffective assistance of counsel. He first stated that the State's initial offer of two years was never conveyed to him. He also testified that it was his understanding that his plea to the court was for the State's last offer of eight years. The petitioner further stated that counsel told him that he could stop the trial and "sign for the eight years."

The petitioner also contended that counsel failed to call witnesses on his behalf. Specifically, the petitioner testified that he asked counsel to call the individuals that were present in the house on the night of the offense as witnesses. However, counsel did not call them because he believed their testimony would be hearsay and would not be helpful to the petitioner's case. The petitioner further stated that he requested that several other witnesses be subpoenaed for trial to no avail.

The petitioner also averred that counsel failed to provide him with discovery despite the petitioner's request that he do so. Finally, the petitioner stated that he requested that counsel explore the possibility of receiving an offer from the State in exchange for information he had on a recent murder case; however, counsel returned only to tell him that the State was uninterested in the information he had. The petitioner stated that he later learned that counsel had represented the defendant in the murder case. The petitioner then contended that counsel failed to disclose a conflict of interest that may have interfered with his plea negotiations.

---

[1] It is the practice of this Court to refer to minor victims by their initials instead of their names. We refer to the victim in this case by her initials because she was a minor at the time of the rape.

Finally, regarding the involuntary plea, the petitioner reiterated that he believed the plea to the court was for the earlier offer of eight years. Moreover, he testified that he would not have pled to the court had he known it was not for a sentence of eight years.

On cross-examination, the following exchange took place:

Q: On the day you pled guilty, did Judge Axley say to you you're pleading guilty to eight years, but we're going to hold a sentencing hearing anyway?
A: No, I don't remember him saying that.
Q: In fact, Judge Axley told you he would determine your sentence, didn't he?
A: Yeah, he did.

The defendant further admitted that the trial court did not guarantee him an eight-year sentence.

Counsel then testified that he did present the two year offer to the petitioner. However, the petitioner rejected the offer and insisted on going to trial. Counsel further testified that the petitioner rejected the State's offer of eight years because he believed that the victim would not testify, therefore it was "safe" to go to trial.

Counsel stated that, following the victim's testimony at trial, the jury was "aghast," and the petitioner decided to stop the trial and attempt to change his plea. Counsel stated that he inquired as to whether the State's offer of eight years was still open, and the State responded with no objection. However, the trial court required that the petitioner plead to the court. Counsel stated that the petitioner spoke with his wife and thereafter entered the plea. Counsel further testified that both he and the trial court explained the procedure of pleading to the court, including the fact that the sentence would be issued by the court because there was no effective offer from the State. Finally, counsel stated that he discussed with the petitioner his range of punishment, which was Range II, and its penalty of between twelve and twenty years for rape.

Regarding the claim of failure to subpoena witnesses, counsel testified that the petitioner did request that several individuals be subpoenaed, including: professional basketball players Michael Jordan, Anfernee "Penny" Hardaway, and Lorenzen Wright; various family members; and a local basketball coach with whom he had worked. Counsel testified that he attempted to serve Hardaway and Wright, but was unsuccessful due to the amount of security surrounding them. Moreover, counsel stated that he believed that calling the petitioner's family members to testify would not be helpful and might even be detrimental to the petitioner's defense, given the fact that the victim was herself a member of the petitioner's family. He further stated that he knew he could contact the family if he determined he needed them to testify following the State's proof. Finally, counsel testified that the local basketball coach was called and did testify as a character witness at the sentencing hearing.

As to the contention of failure to provide discovery materials, counsel stated that he shared all information that he had with the petitioner, with the exception of Jencks material, which he could not provide to the petitioner. Finally, regarding the potential conflict of interest, counsel testified that had had indeed represented the murder defendant in general sessions court but did not represent

him thereafter. He further stated that the defendant was eventually convicted, but the conviction was reversed on appeal. Counsel stated that because the case was "over," the prosecutor was uninterested in the information the petitioner had.

On cross-examination, counsel admitted that he did not speak with the victim before the trial commenced. He further acknowledged that he did not subpoena any witnesses for trial because there "weren't any." Finally, he stated that there was no conflict of interest with regard to the information the petitioner had on the murder case and that the prosecutor was not interested in the information the petitioner offered.

Following the hearing, the trial court denied post-conviction relief. The court first found that counsel did not render ineffective assistance. In support, the court noted that the State initially offered two years in exchange for a plea of guilty to statutory rape and that the offer was rejected based on the mistaken belief that the victim would not testify at trial. The court further found that the petitioner likewise rejected the State's second offer of eight years and that the offer was no longer open when the petitioner stopped the trial following the victim's testimony. The court found that the ramifications of entering a plea to the court were fully explained to the petitioner and that counsel represented the petitioner "as good as he possibly could under very difficult circumstances."

Regarding the issue of withheld discovery, the court found that the petitioner was seeking Jencks material, which would have remained unavailable to him until after the testimony of the witness for whom the material was requested. Tenn. R. Crim. P. 26.2. Finally, the court noted that at the time the petitioner told counsel about the information he had regarding the murder, counsel had no conflict of interest because he only represented the defendant in general sessions court and not at trial. Moreover, the court found that the State was not interested in discussing the case with the petitioner because it had already been reversed on appeal.

Finally, as to the petitioner's plea, the court noted that the guilty plea transcript revealed that the court explained that the petitioner was entering a "straight up plea" and that there would be a sentencing hearing to determine punishment. Moreover, the court found that the petitioner could not "withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." See Brady v. United States, 397 U.S. 742, 90 S. Ct. 463 (1970). As such, the petitioner's challenge was rejected.

Analysis

I. Ineffective Assistance of Counsel

The petitioner first asserts various instances of ineffective assistance of counsel. When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving (1) that counsel's performance was deficient, and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable

or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). This standard has also been applied to the right to counsel under Article I, Section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently and, but for counsel's errors, petitioner would not have pled guilty but would have, instead, insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations that would entitle petitioner to relief. Tenn. Code Ann. § 40-30-110(f) (2004). This Court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001).

The petitioner first contends that counsel failed to convey the two-year offer to him. We note, however, that the post-conviction court accredited the testimony of counsel, who stated that he presented the offer to the petitioner but that it was rejected based on the belief that the victim would not testify at trial. Moreover, this statement is corroborated by the post-conviction testimony of the prosecutor in this case who stated that, after he extended the two year offer, counsel walked over to the petitioner, spoke with him, and then returned to the prosecutor, stating that the offer had been rejected. We conclude that the evidence presented on appeal does not preponderate against the finding of the post-conviction court that the offer was, in fact, relayed to and denied by the petitioner.

We also agree with the post-conviction court's finding that counsel adequately informed the petitioner that his plea to the court was not subject to the State's earlier offer. The post-conviction court again accredited the testimony of counsel, who stated that he informed the petitioner that he would be sentenced by the court and that no effective offer from the State remained. We conclude that the evidence presented on appeal does not preponderate against this finding.

Next, the petitioner contends that counsel failed to subpoena witnesses, including professional basketball players, various family members, and a coach with whom he had previously worked. However, counsel testified that he attempted to subpoena the basketball players, albeit unsuccessfully. Moreover, as a part of his trial strategy, counsel chose to defer his decision to subpoena family members until after the State had presented proof. Finally, the record reflects that counsel successfully procured the testimony of the basketball coach at the sentencing hearing. The post-conviction court ultimately found that the services rendered by counsel were within the range of competence required of attorneys in criminal cases. We agree. Moreover, we note that the

petitioner has failed to demonstrate that, but for the failure to call the named witnesses, he would not have pled guilty but would have continued with the trial.

The petitioner also avers that he was not adequately provided with discovery materials that he had requested. However, we again agree with the post-conviction court that counsel could not have turned any Jencks material over to the petitioner until after the testimony of each witness for whom Jencks material would be requested. Tenn. R. Crim. P. 26.2.

Finally, the petitioner contends that counsel failed to disclose a conflict of interest that adversely affected his plea negotiations. The post-conviction court found that no conflict existed at the time the petitioner wished to offer the information. The record reflects that counsel only represented the murder defendant in general sessions court and that his representation was taken over by another attorney once the case reached criminal court. Moreover, the State was not interested in the information the petitioner wished to provide. We conclude that the evidence does not preponderate against the post-conviction court's findings.

## II. Unknowing and Involuntary Plea

The petitioner also contends his plea was involuntary and unknowing. Our supreme court has stated the following:

> The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. Id. at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences*." Id. at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280 (emphasis added).
>
> Likewise, in Mackey, this Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea . . . ." 553 S.W.2d at 340.

State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999).

In the present case, the post-conviction court found that the ramifications of entering the guilty plea were fully explained to the petitioner. A review of the guilty plea supports this conclusion. The transcript reflects that the petitioner was made aware of his right to be present at trial, the right against self-incrimination, the right to present and cross-examine witnesses, the right to testify, and the right to appeal after trial. The trial court further reminded the petitioner that, upon his plea of guilty, the trial stops:

Q: Once you have stopped this trial, then there is no trial. There is no appeal, this is it and you get a sentencing hearing. What you are doing is bypassing the jury and coming straight before the court. Do you understand that? Yes or no?

A: Yes, sir.

Q: Okay. Do you have any questions at all about what you're doing?

A: No, sir.

The court went on to ensure that the petitioner had come to his conclusion voluntarily and that no promises had been made to induce him to plead. Upon indicating that it was his uncoerced decision to plead, the court accepted the petitioner's plea. We conclude that the plea was indeed voluntary and knowing, as the trial court informed the petitioner of the full battery of rights he was giving up and consequences of the plea.

### III. Tennessee Rule of Criminal Procedure 11 Violation

Third and finally, the petitioner contends that the trial court erred in failing to advise the petitioner as to the range of punishment or question whether he was pleading with any expectations as a result of prior plea negotiations. Specifically, he claims that these omissions violate the dictates of Tennessee Rule of Criminal Procedure 11(c); therefore his plea was not knowingly, voluntarily, and intelligently entered. Initially, we note that this issue is waived because it is raised for the first time on appeal.

Moreover, this claim is not a proper subject for post-conviction review. Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Moreover, in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), the Supreme Court held that the Constitution requires that the accused individual's right against self-incrimination, right to confront one's accusers, and right to a trial by jury be intentionally relinquished.[2] However, any advice beyond that required by Boykin and not tied to a constitutional right is not cognizable in a petition for post-conviction relief but is properly addressed on direct appeal. See State v. Prince, 781 S.W.2d 846 (Tenn. 1989). Because the petitioner's claimed omission falls into this category, it is not a proper subject for post-conviction relief.

### Conclusion

Based on the foregoing and the record as a whole, the denial of post-conviction relief is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

---

[2] As was aforementioned, the rights implicated in Boykin were discussed with and waived by the petitioner during the guilty plea proceedings.